## HERNANDEZ v. GARCIA et al. (No. 1012.)

(Court of Civil Appeals of Texas. El Paso. Oct. 30, 1919. Rehearing Denied Nov. 28, 1919.)

1. SALES ☞199—TITLE PASSES ON PAYMENT WHERE PARTIES SO INTEND.

Where it is the understanding of the parties that title to goats sold shall not pass until payment is made for them, title does not pass, though possession of the goats was delivered to the buyer and a bill of sale, reciting payment, was executed.

2. SALES ☞218½ — EVIDENCE THAT TITLE HAD PASSED INSUFFICIENT TO WARRANT PEREMPTORY INSTRUCTION.

In suit to recover value of goats wrongfully seized by defendants, evidence *held* insufficient to warrant a peremptory instruction for defendants on the theory that plaintiff had parted with title to the goats before the seizure by defendants.

☞For other cases see same topic and KEY-NUMBER in all Key-Numbered Digests and Indexes

**3. REPLEVIN** ⊙∾88 — EVIDENCE OF DEFENDANTS' OWNERSHIP INSUFFICIENT FOR DIRECTED VERDICT.

In an action to recover the value of goats wrongfully seized as damages, where defendants claimed the goats had been stolen from them by another, testimony by plaintiff that he had raised the goats on his ranch requires the issue of ownership to be submitted to the jury.

Appeal from District Court, Brewster County; Jos. Jones, Judge.

Action by Felis Hernandez against Bartola Garcia and others. Judgment for defendants after a directed verdict in their favor, and plaintiff appeals. Reversed and remanded.

C. R. Sutton and Mead & Metcalfe, all of Marfa, for appellant.

W. Van Sickle, of Alpine, and F. G. Morris, of El Paso, for appellees.

Statement of Case.

HIGGINS, J. In a suit pending in the district court of Brewster county, brought by Bartola Garcia, appellee, against Tom Burnam and Jim Mitchell, said Garcia caused to be issued a writ of sequestration against 1,200 goats. Under the writ the goats were seized and thereafter replevied by Garcia.

Thereafter appellant Hernandez brought this suit against Bartola Garcia and Wenscelado Garcia, son and agent of Bartola Garcia. Hernandez alleged that he was the owner of the goats, and that they had been converted by the Garcias in the manner above shown. He sought recovery of the value of the goats as actual damages and exemplary damages for the wrongful and malicious issuance of the writ. Upon trial the court instructed the jury that the evidence disclosed Hernandez had parted with title prior to the sequestration proceedings, and directed a verdict for defendants upon that theory.

The evidence discloses that Bartola Garcia was forced by the Villistas to leave Mexico in 1913. He came to Texas. When he left Mexico he had various properties, among them a ranch stocked with goats. These goats were stolen by the Villista General Rosalio Hernandez, a brother of appellant. The goats in controversy were crossed from Mexico into Texas in December, 1916, at Lajitas, Tex. Garcia had been advised of the probable entry of the goats, and sent his son, Wenscelado Garcia, to Lajitas. Wenscelado arrived there December 3d. Appellant testified that the goats were his and his children's, having been raised by them upon his property in Mexico, and that his brother Miguel Hernandez and one Luis Flott were commissioned to pass and sell the goats. One Jim Mitchell was at Lajitas, and expected to purchase the goats. Tom Burnam was also present, but just what interest he had in the matter is not clearly disclosed by the record. Wenscelado Garcia testified:

"I know Luis Flott. At that time I had a conversation with Luis Flott with reference to those goats that were brought there; he said that he was commissioned by Rosalio Hernandez to sell some goats, and he says, 'I suppose they are yours.' Then Luis Flott came to me the day before or the day after the crossing of the goats, and says, 'Let's have some understanding about these goats so that you will not take them away," his proposition was that Luis Flott offered him $500 in the presence of Hernandez if they wouldn't molest the goats, let them go. After they talked a little while I agreed to take the $500 and this man went off with Flott and was gone about 15 minutes and came back, and he said Don Tomas said he had to pay $500 duties, and he would assume the expense of the litigation. Don Tomas is Tom Burnam. Luis Flott told me that Tom Burnam had to pay $500 duty and he would take the consequences of a suit. I don't know who Tom Burnam was to pay the $500 to, because there was nobody representing the government there. Luis Flott said that Tom Burnam would loan them $500 to pay the duties there; that Luis Flott was responsible for the duty, and they would take the money for the government there. I told them I would take the $500. I didn't want to have any trouble, just to get it and bring it here. Then Luis Flott went to get the money and did not get it, and he came back in about 15 minutes. When he came back he told me that Don Tomas had forbid the Hernandezs from paying the $500, and therefore he couldn't do it. Luis Flott said the defendant Mitchell was the one that he thought was going to buy the goats. Luis Flott didn't pay me the $500.00 that I agreed to accept because Don Tomas wouldn't let him. I don't know who Don Tomas represented. I never had known Luis Flott as the representative of the Mexican government. I didn't do nothing after Don Tomas refused to let Luis Flott pay the $500—came up to Alpine and instituted proceedings."

From the whole record it is plainly apparent that there was some hitch in the consummation of the purchase by Mitchell arising out of the adverse claim to the goats by Bartola Garcia represented by his son Wenscelado. But it appears the goats were delivered to Mitchell by Flott and Miguel Hernandez, and Mitchell started to Alpine, Tex., with them. Garcia then instituted sequestration proceedings, and the goats were seized before they reached Alpine, and replevied as above stated. The sequestration issued December 9, 1916, and the goats seized thereunder on December 12th. On December 8, 1916, at Lajitas, the following bill of sale was executed by Miguel Hernandez:

"La Jitas, Texas, Dec. 8, 1916.

"Before me, the undersigned authority, Paul H. Albright, 2d Lt. 4th Texas Infantry, sum-

mary court, La Jitas, Texas, personally appeared Miguel Hernandez, who on his oath disposes and says that he has this day sold for the sum of $1,212, and by these presents does bargain and sell to Jim Mitchell eleven hundred and fourteen (1,114) goats, of various ages, and hereby acknowledge receipt of $1,212. That he further guarantees the ownership of said goats, and guarantees the said Jim Mitchell against all claims against said goats. These goats were raised and on and have been in peaceable possession of the undersigned for more than eight years.

      "[Signed] Miguel Hernandez.

"Sworn to and subscribed to before me this the 8th day of December, 1916, known to me to be the party who signed this contract. [Signed] Paul H. Albright, 2d Lt. 4th Texas Infantry, Summary Court."

This instrument was delivered to B. Crawford, who testified concerning it as follows:

"I was present when this bill of sale was signed. I know Miguel Hernandez. The bill of sale was delivered to me. Miguel Hernandez. Luis Flott, Mr. Burnam, Jim Mitchell, and a captain and a lieutenant and another soldier were there when that was delivered to me. This bill of sale was to Jim Mitchell. They gave me that bill of sale, and told me to keep it until Jim Mitchell come to Alpine with the goats, and when he paid me for the goats to give it to him, that bill of sale to him. I never delivered that bill of sale to Mitchell."

Jim Mitchell testified:

"After the goats were crossed over on the Texas side I did not see Wenscelado Garcia, not down where the goats were crossed. I never did see him there. I saw him in Lajitas, I saw him there the evening before I went down to cross the goats, left early next morning, but I saw him when I got back that night. He was not down at the river that day to look at the goats of my knowledge. I tried to get him to go out and look at the goats. I went to the place where he was stopping and called him out and tried to get him to go out and look at the goats, but he refused. I don't know that I could tell you exactly what he did say when I tried to get him to go out and look at the goats—anyway he didn't go to look at the goats. I did not use an interpreter when I was talking with him. I speak some Spanish.

"Q. After you received word, Mr. Mitchell, that the goats were stolen you stated you refused to take them. Was any further arrangement made whereby you could take possession of the goats? A. Not at that time. I stayed with the goats until we got to Lajitas; next morning Mr. Burnam, Mr. Crawford, Garcia, and several were there trying to get the matter straightened up. We couldn't do anything, so Mr. Burnam and Mr. Crawford loaned Luis Flott the money to pay the duty with, and there was a bill of sale issued, and they held the bill of sale. That bill of sale was made in my favor, made to me. We had a verbal contract there that if I got the goats and they were not taken away from me I was to pay them the money. Garcia was claiming them, and I figured they might be sequestrated, as they were—some of that kind might turn up. There was no time set, only when got to Al-pine and loaded them on the cars, and if there was no trouble, the goats hadn't been taken away from me, I was to pay them the $1,215."

## Opinion.

[1] As stated above, the court gave the peremptory instruction against appellant upon the theory that title had passed from him at the time of the sequestration proceedings, but it is very clear that the mere delivery of the goats to Mitchell did not pass title. The evidence quoted clearly shows that the bill of sale was not to be delivered to Mitchell until he had paid for the goats, and that it was the intention and understanding of the parties that title should not pass until such payment had been made. If that was the intention of the parties, title did not pass to Mitchell, as there is no contention that he had made the required payment. Lang v. Rickmers, 70 Tex. 108, 7 S. W. 527; Scott v. Childers, 24 Tex. Civ. App. 349, 60 S. W. 775; Tillman v. Janks, 15 S. W. 39; Austin v. Welch, 31 Tex. Civ. App. 526, 72 S. W. 881.

[2] Appellee in support of the court's charge and the judgment asserts:

"As the evidence shows beyond controversy that the sale to Mitchell by appellant of the goats in controversy was completed by verbal sale and delivery before the bill of sale was executed, and as the bill of sale was subsequently executed without delivery or acceptance thereof by Mitchell, the conditions attached by Hernandez to the delivery of the bill of sale and whether or not they were violated are unimportant. It was an ex parte performance by Miguel Hernandez after title had passed under the verbal sale, and it could not have the effect of reinvesting him with title and imposing conditions."

We do not view the evidence in the light indicated in the foregoing proposition. Under the evidence quoted it does not appear that the sale of the goats to Mitchell and passing of title had been effected prior to the execution of the bill of sale. Upon the contrary it appears that it was all a part of one transaction, and that Mitchell held possession subject to the condition that title would not pass and the bill of sale be delivered until he had paid for the animals. Certainly, an issue of fact as to the intention of the parties with reference to the passing of title was raised by this evidence. The peremptory instruction should not have been given.

[3] Upon the question of title raised by the evidence of Garcia that the animals belonged to him and had been stolen from his ranch in Mexico an issue of fact in this respect was raised by the testimony of appellant that they belonged to him, and had been raised on his ranch in Mexico by himself and family. Thus upon no theory of the case can the peremptory instruction be sustained.

Reversed and remanded.